<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————

| | |
|---|---|
| **JANSSEN PHARMACEUTICA N.V., and** | : |
| **JANSSEN PHARMACEUTICA** | : |
| **PRODUCTS, L.P.** | : |
| | : |
| **Plaintiffs,** | : CIVIL ACTION NO. 03-6220 (JCL) |
| | : |
| **v.** | : |
| **MYLAN PHARMACEUTICALS, INC.,** | : |
| | : |
| **Defendants.** | : |

—————————————————————

| | |
|---|---|
| **JANSSEN PHARMACEUTICA N.V., and** | : |
| **JANSSEN PHARMACEUTICA PRODUCTS,** | : |
| **L.P.** | : |
| | : |
| **Plaintiffs,** | : CIVIL ACTION NO. 03-6185 (JCL) |
| | : |
| **v.** | : |
| | : |
| **DR. REDDY'S LABORATORIES, LTD., and** | :        OPINION |
| **DR. REDDY'S LABORATORIES, INC.** | : |
| | : |
| **Defendants.** | : |

—————————————————————

## I. INTRODUCTION

Presently before this Court is a dispute over Plaintiffs', Janssen Pharmaceutica N.V.'s

and Janssen Pharmaceutica Products, L.P.'s ("Janssen"), Bill of Costs. Following a bench trial,

which lasted from June 28 through July 5, 2006, the Honorable John C. Lifland, U.S.D.J.,

entered an Order and Opinion in favor of Janssen against Defendants, Mylan Pharmaceuticals

Inc., ("Mylan"), Dr. Reddy's Laboratories, Ltd., and Dr. Reddy's Laboratories, Inc. ("Dr

Reddy's")(collectively "Defendants"). Subsequently, on October 16, 2006, Mylan appealed the

-1-

Order. On November 8, 2006, the Court entered Final Judgment in favor of Janssen in which all counterclaims were dismissed with prejudice and costs were awarded to Janssen. On November 9, 2006, Mylan filed a second Notice of Appeal and is currently awaiting a decision. At no time has Dr. Reddy's appealed the District Court's original Order and Opinion or the general awarding of fees.

On November 13, 2007, Janssen submitted the within Motion to Tax Costs Pursuant to F. R. Civ. P 54(d) and L. Civ. R. 54.1. Janssen is seeking costs in the amount of $35,712.09.[1] Dr. Reddy's is protesting approximately $ 5,565.75 of those costs.[2] Notably, Dr. Reddy's is not

---

[1]     Janssen's submissions to this Court have varied on the taxable costs. In their first submission to the Court, filed on November 13, 2006, Janssen indicated in the Notice of Motion that the taxable amount was $35,712.09. However, in the Declaration of Scott B. Howard, in support of the Motion to Tax, the taxable amount was listed as $ 35,504.09. This created a difference of $ 208.00. In its Reply brief, Janssen indicated that $208.00 of the discrepancy was a result of Dr. Reddy's ignoring the witness fees which were stated on the Bill of Costs as $240.00 and specifically itemized therein and an accidental omission of $32.00 in court reporter fees. Because the Bill of Costs properly includes the $208.00 for witness fees the Court is inclined to grant same as there is no objection by Dr. Reddy's to the inclusion of witness fee costs. However, the Court will not consider the additional $ 32.00 as it is materially omitted from the Bill of Costs, the Notice of Motion and subsequent filings by Janssen in support of its Motion for Taxation of Costs.

In a subsequent filing on January 31, 2007, Janssen included a line-by-line itemization of costs which the Court and Dr. Reddy's calculated to total $35,750.91. Said sum included the $240.00 witness fees. This raises a $38.82 differential between Janssen's Notice of Motion and the line-by-line itemization. Critically, the line-by-line itemization is the **only** place where the $38.82 is stated. Moreover, all briefs submitted in support of Janssen's Motion list the taxable amount as $ 35, 712.09. Therefore, the Court finds that Janssen may be entitled to the $208.00 in so much as it was listed in the original Bill of Costs but does not find that Janssen is entitled to the additional $38.82 raised in the line-by-line itemization.

[2]

| | |
|---|---|
| 1. DVD-ROM Transcript of Donald Abraham Deposition (6/14/06) | $ 385.00 |
| 2. Hand Delivery of Video of D. Abraham Deposition (6/14/06) | $ 21.00 |
| 3. Expert Witness Surcharge for D. Abraham (6/14/06) | $ 174.30 |
| 4. Video Deposition of D. Abraham (6/14/06) | $ 174.30 |
| 5. Amicus Disk for Kennis Ludo (10/20/04) | $ 10.00 |
| 6. Video Deposition of K. Ludo (10/20/04) | $ 59.75 |
| 7. Technical Transcript Surcharge for K. Ludo (10/20/04) | $ 167.30 |
| 8. DVD-ROM Transcript of Herbert Meltzer (6/9/06) | $ 302.50 |
| 9. Hand Delivery of Video Deposition of H. Meltzer (6/9/06) | $ 21.00 |
| 10. Technical Deposition Surcharge for H. Meltzer (6/9/06) | $ 150.50 |
| 11. Video Deposition of H. Meltzer (6/9/06) | $ 150.50 |
| 12. Expedited Delivery Charges for Deposition Transcript of Joseph Strupczewski (11/17/04) | $ 262.00 |

objecting to $ 30,146.34 and therefore is responsible for their apportioned share.[3] At such time, Mylan has submitted no opposition.

Dr. Reddy's urges this Court to determine that Janssen's Bill of Costs is excessive by $5,565.75 for several reasons. First, Dr. Reddy's argues that costs incident to the video recording of depositions are not taxable. The invoices from Esquire Deposition Services ("Esquire"), the stenographic company used in this matter, include numerous charges for video depositions and related fees including surcharges for "video depositions", DVD-ROMs and "real-time" depositions. Dr. Reddy's claims that it is not responsible for either the costs of videotaping the depositions or any of the fees incident thereto, because they never purchased any deposition video recordings. Most critically, Dr. Reddy's asserts that neither Rule 54(d) nor Local Rule 54.1 state that costs incident to video recordings of depositions, over and above the costs for a

---

| | | |
|---|---|---|
| 13. Rough ASCII for Deposition Transcript of J. Strupczewski (11/17/04) | | $ 196.50 |
| 14. Expedited Delivery Surcharges for Deposition Transcript of J. Strupczewski (11/16/04) | | $ 492.00 |
| 15. Rough ASCII for Deposition Transcript of J. Strupczewski (11/16/04) | | $ 369.00 |
| 16. Interactive Real Time Production of Deposition Transcript of Carol Tamminga (6/6/06) | | $ 268.50 |
| 17. Technical Deposition Surcharge for C. Tamminga (6/6/06) | | $ 125.30 |
| 18. Video Deposition of C. Tamminga (6/6/06) | | $ 125.30 |
| 19. DVD-ROM Transcript of C. Tamminga (6/6/06) | | $ 224.40 |
| 20. Hand Delivery of Deposition Transcript of C. Tamminga (6/6/06) | | $ 21.00 |
| 21. Minimum Video Charge for Deposition of Manfred Wolff (6/6/06) | | $ 295.00 |
| 22. Overtime Charges for Deposition of M. Wolff (6/6/06) | | $ 712.00 |
| 23. Shipping of Deposition Transcript from Chicago (6/6/06) | | $ 34.00 |
| 24. DVD-ROM Transcript of M. Wolff Deposition (6/6/06) | | $ 415.80 |
| 25. Hand Delivery of Deposition Transcript of M. Wolff (6/6/06) | | $ 21.00 |
| 26. Expert Witness Surcharge for M. Wolff (6/6/06) | | $ 193.90 |
| 27. Video Deposition of M. Wolff (6/6/06) | | $ 193.90 |
| | | |
| **TOTAL** | | **$ 5,565.75** |

[3] Apportionment discussed infra.

-3-

conventional transcript, are necessary to the litigation and therefore, are not taxable. Second, Dr. Reddy's asserts that they should not be responsible for costs incurred by Janssen for certain expedited deliveries of transcripts. Finally, Dr. Reddy's argues that Janssen erroneously included certain surcharges charged by Esquire. Specifically, Dr. Reddy's alleges that Esquire mistakenly and wrongly billed for certain charges related to deposition services. Dr. Reddy's states that they recognized the errors and required Esquire to remove them from their invoice prior to payment, but Janssen neglected to do so. Therefore, Dr. Reddy's argues, they should not be responsible for paying for Janssen's failure to contest errors on the invoice.

## DISCUSSION

## II. OUT-OF-POCKET EXPENSES

### A. Generally

Taxation of costs is authorized by Fed. R. Civ. P. 54(d) and governed by 28 U.S.C. § 1920 which provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> > (1) Fees of the clerk and marshal;
> > (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> > (3) Fees and disbursements for printing and witnesses;
> > (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> > (5) Docket fees under section 1923 of this title;
> > (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

*Garonzik v. Diner*, 910 F. Supp. 167, 169 (D.N.J. 1995). Other than when the matter is controlled

by a federal statute or rule, Rule 54(d) vests the Court with a sound discretion, which extends to all civil actions and embodies a practice long recognized in equity. *Newton v. Consolidated Gas Co. of New York*, 265 U.S. 78 (1924). In keeping with the discretionary character of the rule, the federal courts are free to pursue a case-by-case approach and make their decisions based on the circumstances and equities of each case. *Lacovara v. Merrill Lynch, Pierce, Fenner & Smith*, 102 F.R.D. 959, 961 (E.D. Pa. 1984). The burden is on the unsuccessful party to show circumstances that are sufficient to overcome the presumption in favor of the prevailing party, and if the court denies costs it should state the reasons for doing so to allow review. *Id.*

### B. Videotaping

L. Civ. R. 54.1(g)(7) allows for the taxation of deposition costs directly related to the use of a deposition transcript. *In re Baby Food Antitrust Litigation* clarified this point in stating that the key to taxability under 54.1 is that the transcript be "used at trial under Fed. R. Civ. P. 32". 166 F.3d 112, 139 (3d Cir. 1999). Rule 32 encompasses all lawful uses of pretrial depositions in judicial proceedings at any stage of the litigation, including trial, pretrial motion hearings or any interlocutory proceedings before the Court. Permissible uses include impeaching a witness (Fed. R. Civ. P. 32(a)(1)); use as substantive evidence as an admission of an adverse party under Fed. R. Evid. 802(d)(2), (Fed. R. Civ. P. 32(a)(2)); and use as substantive evidence because of witness unavailability pursuant to Fed. R. Evid. 804, (Fed. R. Civ. P. 32(a)(3)). Essentially any use of the transcript to examine a witness at trial or in a hearing will render the deposition costs taxable. *See Datascope Corp. v. Smec, Inc.*, 1988 U.S. Dist. LEXIS 12199 (D.N.J. September 15, 1988).

As stated in *Garonzik*, "[n]either § 1920 nor the Local Rules explicitly provide for fees associated with videotape depositions." 910 F. Supp. at 170. However, relying on case law from

a multitude of Districts, the *Garonzik* Court developed a standard to determine the taxability of videotaped depositions. *Id.* Rule 30(b)(2), the current provision authorizing the taking of depositions by other than stenographic means, states that "any party may arrange for a transcription to be made from the recording of a deposition taken by nonstenographic means." Conspicuously absent from the current language in the Rule is the phrase "at the party's own expense." The *Garonzik* Court noted that "the revised rules contain an express requirement that a party who has noticed a deposition to be taken by other than stenographic means must provide a transcript to opposing parties as part of its discovery obligations." *Garonzik*, 910 F. Supp. at 172 (citing Fed. R. Civ. P. 26(a)(3)(B)). That party must also provide a transcript if the video deposition is to be offered as evidence at trial or upon a dispositive motion. Fed. R. Civ. P. 32(c). "Thus, under the revised rules, it is clear that a transcript of a videotape deposition is not for the "convenience of counsel", but rather is an express obligation." *Garonzik*, 910 F. Supp. at 172. The shift in language of Rule 30(b)(2) renders moot the reasoning of those courts that held that Rule 30(b)(4) contained an express exemption from Rule 54(d)'s allowance of costs for transcripts of videotape depositions. *Id.* This Court finds the *Garonzik* opinion, as well as the case law it relies on, compelling in this matter.

The Court in *Garonzik*  held that expenses associated with videotaped depositions are taxable to the prevailing party under Rule 54(d) of the Federal Rules of Civil Procedure. 910 F. Supp. 167. The court reached its conclusion by reading in conjunction: (1) Rule 30(b)(2) permitting a deposition to be recorded by sound, sound and visual, or stenographic means; (2) a local rule requiring the clerk to allow all or part of the fees and charges incurred in the taking and transcribing of depositions used at trial under Rule 32 of the Federal Rules of Civil Procedure

without distinguishing between stenographic and non-stenographic depositions; and (3) 28

U.S.C.A. § 1920(2), allowing taxation of costs for fees "of the court reporter for all or any part of

the stenographic transcript necessarily obtained for use in the case." *Garonzik*, 910 F. Supp. 167;

*See also* 156 A.L.R. Fed. 311at 3. Reading these three provisions together this Court finds that

Janssen is entitled to certain costs associated with the videotaped depositions.

## 1. Video Depositions of Abraham, Meltzer, Tamminga & Kennis

In the instant matter there are five (5) video depositions in question: Abraham[4], Meltzer[5],

Tamminga[6], Kennis[7] and Wolff[8].  Dr. Reddy's is taking the position that it did not order any

---

[4] Dr. Reddy's refers to this witness as Dr. Donald "Abramson" while Janssen refers to this witness as Dr. "Abraham". For ease of reference, the Court will refer to this witness as "Abraham". Abraham is one of Janssen's three expert witnesses who testified live at trial. Janssen alleges that Dr. Reddy's played an excerpt of Abraham's video deposition at trial. Dr. Reddy's does not dispute this. Both parties agree that Janssen did not play any portion of the video deposition at trial.

[5] Meltzer was one of Janssen's experts. Defendants arranged for the court reporter and videographer and requested that the depositions be videotaped. Meltzer was a witness who testified live at trial. Janssen alleges that the deposition transcript of Meltzer was used to impeach her at trial but that no excerpts of the video deposition were played.

[6] Tamminga was one of Janssen's experts. Defendants arranged for the court reporter and videographer and requested that the depositions be videotaped. Dr. Reddy's acknowledges that the attorney who defended this deposition is hearing impaired. However, they assert that the additional cost for the "interactive real time" of this deposition should not be borne by Dr. Reddy's because counsel for Janssen had at least five other attorneys on this matter. This Court assumes that Dr. Reddy's means five other non-hearing impaired attorneys. Realtime technology allows court reporters to instantly convert their stenographic notes into English text. The text is then displayed on computer monitors or large projection screens so that the testimony can be read.There are 28 million Americans who are deaf or hard of hearing. The Americans with Disabilities Act of 1990 ("ADA") mandates equal access to the courtroom for all Americans. Under the ADA (42 USCS §§ 12101 et seq.), courts are required to ensure equal access to handicapped individuals...*State v Ehrenberg,* 284 N.J. Super. 309  (1994, Law Div).   The term "disability" means, with respect to an individual--(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C.A. § 12102(2).  Subject to the provisions of this [title], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C.A. § 12132. Persons with hearing impairments are considered disabled pursuant to the ADA. 42 U.S.C.S. §§ 12101 et seq. This Court does not intend to entertain a lengthy discussion on whether "realtime deposition" transcripts are required pursuant to the ADA as that matter is not properly before this Court. However, the Court notes that the only argument provided by Dr. Reddy's regarding the reasons the $268.50 for the realtime deposition of Tamminga should not be taxable is that other non-hearing impaired attorneys were capable of taking the deposition. The Court does not find that reason compelling enough the dismiss those costs.

video recording of any depositions because none were ever necessary during the pendency of this action. Moreover, Dr. Reddy's asserts that although it and Mylan ultimately conducted a joint trial against Janssen, they never agreed or even discussed sharing deposition video recording costs, or otherwise allowing Dr. Reddy's to use Mylan's video recordings of the depositions. *See* Dr. Reddy's Correspondence, January 31, 2007 at 2, n. 3. Additionally, Dr. Reddy's asserts that Janssen never used any recorded video depositions during the trial or in any pre-trial or post-trial proceedings. *See* Dr. Reddy's Correspondence, January 31, 2007 at 2. Like in *Garonzik*, Janssen is requesting fees for preparation of the video, the stenographic copy of the deposition transcript as well as a copy of the videotape. As previously stated, the courts are not in agreement as to the taxability of the aforementioned fees. As precisely stated in *Garonzik*, the courts that typically permit the award of fees associated with video depositions also generally allow the costs for preparation as well as playback as "long as the use of the videotape was reasonably necessary to trial". *Garonzik*, 910 F. Supp. at 171 (*construing Barber v. Ruth*, 7 F.3d 636 (7th Cir. 1993); *Commercial Credit Equip. Corp. v. Stamps*, 920 F.2d 1361 (7th Cir. 1990); *Meredith v. Schreiner Transport, Inc.*, 814 F. Supp. 1004 (D. Kan. 1993); *Macaro v. Pratt & Whitney*

---

Janssen alleges that the deposition transcript of Tamminga was used to impeach her at trial but that no excerpts of the video deposition were played.

[7] Kennis is a former employee of Janssen. Dr. Reddy's noticed the deposition of Kennis and requested a videotaped deposition. Kennis did not appear as a live witness at trial. Both Janssen and Dr. Reddy's agree that deposition designations of Kennis were used during the trial. Janssen asserts that the Defendants in this matter played excerpts from the Kennis video deposition at trial. Dr. Reddy's has not objected to this assertion. Both parties agree that Janssen did not play any portion of the video deposition at trial.

[8] Wolff was one of Defendants' experts. Janssen noticed his deposition and arranged for the videotaping thereof. Janssen alleges that during the trial Wolff was impeached using his deposition testimony. The videotaped portion of the transcript was not used.

*Canada, Inc.*, 1995 U.S. Dist. LEXIS 16325 (E.D. Pa. 1995); *Molnar v. Elgin, Joliet & Eastern Railway Co.*, 697 F. Supp. 306 (N.D. Ill. 1988); *Jamison v. Cooper*, 111 F.R.D. 350 (N.D. Ga. 1986); *Deaton v. Dreis & Krump Mfg. Co.*, 134 F.R.D. 219 (D. Ohio 1991); *Sack v. Carnegie Mellon Univ.*, 106 F.R.D. 561 (W.D. Pa. 1985)).

In the instant matter it appears that only one of the five video depositions, Wolff, was taken at the request of Janssen. The remaining depositions were taken under video deposition subpoena as served by Dr. Reddy's and/or Mylan. Only the video depositions of Abraham and Kennis were played at trial and the pleadings in this matter indicate that they were played at the request of either Dr. Reddy's or Mylan. Importantly, Dr. Reddy's is not objecting to the cost of any stenographic transcript.

Under Title 28 Section 1920(2) of the United States Code, "costs for transcripts may be awarded only upon a showing that they were 'necessarily obtained for use in the case'." *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993); *Accord Garonzik*, 910 F. Supp. 167. "What constitutes 'necessity' in this context 'has been the subject of considerable controversy'." *Barber*, 7 F.3d at 645 (citing *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir. 1985)). However, the Court in *Barber*, as followed in the *Garonzik* Court, stated and applied several general principles.

> [f]irst, transcripts need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough if they are "reasonably necessary." Second, "the determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use." Thus, that [plaintiff] may ultimately have been available to testify in person at trial does not render the cost of his deposition nontaxable. Finally, courts may not tax the costs of transcripts of depositions provided merely for the convenience of the requesting attorney. [internal citations omitted].

*Barber*, 7 F.3d at 645. Certainly, where Defendants themselves noticed a deposition as a video deposition and arranged for all matters related thereto, this Court cannot find that Defendants are not responsible for the costs without more evidence to the contrary. Defendants' actions alone, of

serving video deposition subpoenas, seems to mean that the video depositions of these witnesses were considered by Defendants to be necessary for trial. Moreover, Defendants used at least two video depositions at trial. Therefore, as to the video depositions of Abraham, Meltzer, Tamminga, and Kennis, this Court concludes that they could be deemed reasonably necessary to trial and are for purposes of this motion.

Dr. Reddy's also asks this Court to determine that where there was no evidence of the witnesses' potential absence at trial, the video depositions are not taxable. As stated in *Barber*, it is of no matter to this Court in determining the taxability of video depositions that the witnesses were ultimately available at trial. It is enough that the parties may have believed, at the time the deposition was taken, that the witness might have been unavailable for trial. Again, it was Defendants who urged the video depositions of these witnesses. Defendants cannot now claim that they should not be responsible for the charges incurred because the witnesses they demanded video depositions of were ultimately available. In light of the foregoing, the Court has determined that the video depositions of Abraham, Meltzer, Tamminga, and Kennis were reasonably related to trial and that at the time they were taken there was a reasonable presumption of unavailability. Therefore, the costs of the video depositions of Abraham, Meltzer, Tamminga, and Kennis and all costs related thereto, are taxable to Defendants.[9] *This Court is*

---

[9] The Court has considered Dr. Reddy's argument that Janssen has already had two opportunities to explain to the Court why the costs it seeks are justified and that they have failed to do so. This Court is satisfied that Janssen's original Reply Brief on its Motion for Costs and the Declaration of Scott B. Howard, while somewhat lacking, satisfies the requirement of L. Civ. R. 54.1(b). The Court's request that the parties "submit a more detailed letter brief...outlining all of the facts and law relevant to this issue" and seeking a line-by-line itemization was for clarification of the legal analysis, i.e. case law and analysis of taxation of video depositions, rather than a finding of this Court that the previous submissions failed to meet the standards required pursuant to L. Civ. R. 54.1(e) and (f). Additionally, this Court notes that Dr. Reddy's did not provide, in either its original submissions to this Court, or in the subsequent submission requested by this Court any reference to case law or analysis thereof on any of the issues including the taxation of video depositions in spite of the Court's specific request and in spite of the fact that an

*satisfied that the costs of the video depositions of Abraham, Meltzer, Tamminga, and Kennis are taxable in an amount of $ 1,243.40.*[10]

### 2. Surcharges Related to the Video Depositions of Abraham, Meltzer, Tamminga & Kennis

The Court recognizes that Dr. Reddy's successfully contested certain surcharges related to the videotaped depositions with Esquire. Since the Court has already determined the validity of the video depositions themselves there is no need to separately evaluate the surcharges related to the video depositions. It appears from the record that Dr. Reddy's disputed the "video deposition" charges with Esquire because they are not standard charges associated with stenographic depositions. This Court, however, determines that said charges are standard charges associated with the videotaping of depositions. Certainly, it can be concluded that recording a deposition via video will have additional costs than simply transcribing a deposition by stenographic means. As previously stated  "[a]ny party may arrange for a transcription to be made from the recording of a deposition taken by nonstenographic means". Fed. R. Civ. P. 30(b)(2). But absent from this phrase is the language, "at the party's own expense". In addition, case law provides that the party who noticed the video deposition must provide a copy of the

---

entire body of case law exists on this point. Rather, Dr. Reddy's stated time and time again that the reason the costs were not taxable is that Janssen failed to state why they were taxable.

<table>
<tr><td>10</td><td>1. DVD-ROM Transcript of Donald Abraham Deposition (6/14/06)</td><td>$ 385.00</td></tr>
<tr><td></td><td>2. Hand Delivery of Video of D. Abraham Deposition (6/14/06)</td><td>$ 21.00</td></tr>
<tr><td></td><td>3. DVD-ROM Transcript of Herbert Meltzer (6/9/06)</td><td>$ 302.50</td></tr>
<tr><td></td><td>4. Hand Delivery of Video Deposition of H. Meltzer (6/9/06)</td><td>$ 21.00</td></tr>
<tr><td></td><td>5. Interactive Real Time Production of Deposition Transcript<br>   of Carol Tamminga (6/6/06)</td><td>$ 268.50</td></tr>
<tr><td></td><td>6. DVD-ROM Transcript of C. Tamminga (6/6/06)</td><td>$ 224.40</td></tr>
<tr><td></td><td>7. Hand Delivery of Deposition Transcript of C. Tamminga (6/6/06)</td><td>$ 21.00</td></tr>
<tr><td></td><td>**TOTAL**</td><td>**$ 1,243.40**</td></tr>
</table>

-11-

transcript as well. *Garonzik*, 910 F. Supp. at 172 (citing Fed. R. Civ. P. 26(a)(3)(B)). This Court can contemplate a party noticing a video deposition, therefore being responsible for all video related charges and yet, claiming that they should not be required to provide or suffer the additional expenses of a stenographic transcript. Fed. R. Civ. P. 26(a)(3)(B) prohibits such an action simply by mandating that anyone who chooses to take a deposition by video is also responsible for providing a stenographic copy. Here, Defendants chose to take video depositions. Therefore, they are automatically responsible for the stenographic transcript charges. However, this Court cannot state that simply because the video depositions were not used, either by Plaintiff or Defendants, the costs of the video depositions are a wash. To take the video depositions there must have been a presumption by Defendants that the videos were going to be necessary. While Dr. Reddy's has claimed that they did not need the videos, they have provided insufficient evidence that they were not necessary. To now say that since Janssen did not play them at trial they were not necessary would be inequitable. Janssen should not be required to prove that they were necessary as they were not the ones who required the video depositions in the first instance and therefore, should not be required to dispute the surcharges related thereto. *Hence, $509.85 in fees are taxable against Defendants*.[11]  Moreover, this Court cannot draw the same conclusion as Dr. Reddy's, that simply because they were successful in disputing these charges so to would have been Janssen.

### 3. Imputing Costs of Mylan's Actions on Dr. Reddy's

---

[11]  

| | |
|---|---|
| 1. Video Deposition of D. Abraham (6/14/06) | $ 174.30 |
| 2. Video Deposition of K. Ludo (10/20/04) | $ 59.75 |
| 3. Video Deposition of H. Meltzer (6/9/06) | $ 150.50 |
| 4. Video Deposition of C. Tamminga (6/6/06) | $ 125.30 |
| **TOTAL** | **$ 509.85** |

The Court must also consider Dr. Reddy's argument that the actions of Mylan, in purchasing and using video depositions, should not be imputed to Dr. Reddy's as they never agreed upon or discussed the sharing of video or otherwise allowing Dr. Reddy's to use the copies that Mylan purchased. The Court does not find this argument compelling. Dr. Reddy's and Mylan conducted a joint trial. Dr. Reddy's indicates that it did not know that the Court would hold a single trial until the trial began. While the record does not show that the parties had knowledge that a joint trial would be held until trial, the record is equally devoid of any indication that either Dr. Reddy's or Mylan objected to a joint trial. Critically, several motions and documents throughout the matter, including the Defendants' trial brief, were filed jointly by Dr. Reddy's and Mylan. Such inaction, failing to oppose the single trial and the subsequent action of filing multiple motions jointly, leads this Court to one conclusion, that the legal strategy of Dr. Reddy's and Mylan in this matter were so closely related and intertwined that the actions of one cannot be separated from the actions of the other. This would include the action of serving video deposition subpoenas. Moreover, the depositions, testimony and cross examination of Abraham, Meltzer, Tamminga, and Kennis were relevant to both Dr. Reddy's and Mylan's defense.

Regardless of the above determination, this District has concluded that pursuant to L. Civ. R. 54.1(g)(4), costs will not be apportioned among multiple parties. If the parties cannot agree among themselves as to their proper shares, a motion under L. Civ. R. 7.1  must be made to the Court for such apportionment. This rule is true even when there is no clear cut manner in which to determine the proportion of costs. Dr. Reddy's placed itself in an interesting position regarding this matter. As already stated the award in this case is against both Defendants, Mylan and Dr.

Reddy's. However, the Opinion and Order against Mylan is pending an appeal. Yet, this does not require an automatic stay of this motion as stated in L. Civ. R. 54.1(a). Therefore, this Court cannot award costs directly against Dr. Reddy's or Mylan but only against Defendants as a whole. This Court makes no judgment as to the lack of appeal by Dr. Reddy's. On the other hand, the Court questions why Dr. Reddy's did not request a stay of the judgment on taxation of costs until a final determination was made regarding Mylan's liability. Had Dr. Reddy's done so, the Court likely would have entertained a motion to apportion the costs. In this context, Dr. Reddy's arguments regarding the sharing and use of video depositions that were subpoenaed by Mylan and not Dr. Reddy's would have been more relevant and in any event more persuasive. However, Dr. Reddy's decided to proceed on this motion alone and as such, will, for the time being, be shouldered with the burden of the costs alone. Of course, should Mylan not be successful on appeal, this Court will entertain a motion regarding apportionment as well as any motion Mylan may have in objection to Janssen's costs.

### 4. Video Deposition of Wolff

Left now, for the Court to determine is the taxability of the Wolff deposition. Unlike the previously discussed depositions, the video deposition of Wolff was subpoenaed by Janssen and was not played at trial. As previously stated, the standard for determining the taxability of video depositions is their "reasonable necessity" to the trial. Wolff, did testify at trial, his deposition transcript was used for impeachment and there is every indication that the parties were aware Wolff was going to be a witness from early on in this matter. Moreover, Wolff is Janssen's expert and presumably they would have had direct control over his appearance at trial. As the 7th Circuit stated in *Commercial Credit Equipment Corporation*,

> [c]onsidering the complexity of trials and the extreme demands on judicial manpower and court, time we are of the opinion that it is proper to tax costs for the videotaping of depositions but not necessarily for the transcripts thereof. Videotaped depositions are a necessary and time effective method of preserving witnesses' time and allocating precious court and judicial time in this age of advanced court technology and over-crowded court calendars.  We must not seem reluctant to adopt any and all time-saving methods that serve to improve our system of justice.

920 F.2d at 1368. This Court finds the language in *Commercial Credit* compelling. This Court must determine whether or not the video deposition of Wolff was reasonably necessary to the trial or whether the video deposition was taken for the mere convenience of Janssen. Neither Janssen nor Dr. Reddy's provided this Court with sufficient information to make a certain determination on this point.

As Janssen indicated in its January 31, 2007, correspondence to this Court in support of its Bill of Costs, the video deposition of Wolff was taken to record verbal and physical queues of the witness's credibility. Additionally, Janssen asserts that the video deposition was taken to confirm that the stenographic transcript was correct. Dr. Reddy's position is that the video recordings of depositions were wholly unnecessary, that Janssen never used the video recordings and most critically, that Janssen has articulated no reason why the videotaped depositions were required. Again, L. Civ. R. 54.1 states

> (a) Within 30 days after the entry of a judgment allowing costs, or within 30 days of the filing of an order dispositive of the last of any timely-filed post-trial motions, whether or not an appeal has been filed, the prevailing party shall serve on the attorney for the adverse party and file with the Clerk a Bill of Costs and Disbursements, together with a notice of motion when application will be made to the Clerk to tax the same.

> (b) Such Bill of Costs shall precisely set forth each item thereof, so that the nature of the charge can be readily understood, and shall be verified by the attorney for the applicant, stating that (1) the items are correct, (2) the services were actually and necessarily performed, and (3) the disbursements were necessarily incurred in the

action or proceeding. Counsel shall append to the verified Bill of Costs copies of all invoices in support of the request for each item.

While Janssen has stated with particularity each item to be taxed and has attached specific invoices to their Bill of Costs they certainly have not provided an in depth and eloquent description as to why the deposition of Wolff was recorded. Simply recording a deposition to later determine that "hand gestures" made a witness more or less credible does not make the video necessary. On the other hand, Dr. Reddy's has not stated with particularity the reasons for objecting to the video deposition of Wolff, as required by L. Civ. R. 54.1(f), other than stating the circular argument that the video recording was unnecessary and that Janssen has not stated why it would be. This puts this Court in a difficult position in determining the taxability of the video deposition of Wolff. The Local Civil Rules are clear, "[u]pon failure of the prevailing party to comply with this Rule, all costs shall be waived". L. Civ. R. 54.1(e). Neither party has complied. Therefore, this Court can see no other option than to split the cost of the video deposition of Wolff between Defendants and Janssen. The Court is satisfied that the costs associated with the video deposition of Wolff are $ 1,671.70.[12] Therefore, this Court awards Janssen $ 835.85 in costs for the deposition of Wolff.

### C. Expedited Transcripts

Dr. Reddy's disputes $ 754.00 in expedited delivery charges for the deposition of

---

[12]

| | | |
|---|---|---|
| 1. Minimum Video Charge for Deposition of Manfred Wolff (6/6/06) | | $ 295.00 |
| 2. Overtime Charges for Deposition of M. Wolff (6/6/06) | | $ 712.00 |
| 3. Shipping of Deposition Transcript from Chicago (6/6/06) | | $ 34.00 |
| 4. DVD-ROM Transcript of M. Wolff Deposition (6/6/06) | | $ 415.80 |
| 5. Hand Delivery of Deposition Transcript of M. Wolff (6/6/06) | | $ 21.00 |
| 6. Video Deposition of M. Wolff (6/6/06) | | $ 193.90 |
| **TOTAL** | | **$ 1,671.70** |

Strupczewski. Strupczewski was a scientist at Aventis who invented the prior art that Dr.
Reddy's was relying upon in its defense to the patent suit. Dr. Reddy's arranged for the
deposition of Strupczewski in Bridgewater, New Jersey, on November 16 and 17, 2004. Janssen
asserts that because there were impending expert report deadlines they were required to obtain
the deposition transcript of Strupczewski in an expeditious manner.

 The matter of taxation of expedited transcripts is one of first impression in this Court.
However, other Districts have encountered this issue and most have taken the same if not a
similar approach. For instance, the United States District Court for the Eastern District of
Pennsylvania has determined that "[t]he exigencies and deadlines which inevitably arise in
litigation may justify the extra cost associated with a rushed delivery of a deposition transcript.
Taxing such costs is appropriate, unless they are incurred for no other reason than the
convenience of the attorneys." *Fitchett v. Stroehmann Bakeries*, 1996 U.S. Dist. LEXIS 1168,
12-13 (E.D. Pa. 1996). The United States District Court for the Southern District of New York
echoed the *Fitchett* decision and stated that "[e]xpedited transcripts are considered 'necessary'
only if an impending deadline for such a motion necessitates such expedition." *Yin v. Japan
Soc'y, Inc.*, 2000 U.S. Dist. LEXIS 8828, 7-8 (S.D.N.Y. June 26, 2000); *See also Gottlieb v.
Simon*, 1999 U.S. Dist. LEXIS 16926 (S.D.N.Y. Nov. 2, 1999). The Court finds the decisions in
*Fitchett* and *Yin* compelling in that costs for expedited materials should only be borne by the
taxed party if the expedition of such materials was necessary where, for instance, trial or a court
ordered deadline was pending.

 This Court has fully reviewed the record in this matter. On March 15, 2004, Magistrate
Judge Haneke entered a scheduling order closing fact discovery on November 15, 2004. (*See*

Janssen Pharmaceutica v. Dr. Reddy's, 03-6185, Docket Entry No. 20). Then, on November 30, 2004, Magistrate Judge Haneke entered an order extending fact discovery until March 15, 2005. (*Id.* at Docket Entry No. 31). No deadlines were set regarding expert discovery at this time. It was not until June 15, 2005, that expert discovery deadlines were discussed and a schedule was set. During a conference before Magistrate Judge Haneke on June 15, 2005, the following schedule was set by this Court:

> July 31, 2005 for Affirmative Expert Reports
> August 31, 2005 for Responding Reports
> September 21, 2005 for rebuttal reports; and
> October 31, 2005 for completion of expert depositions.

(*Id.* at Docket Entry No. 40). The deposition of Strupczewski was taken only days after the close of fact discovery and most critically, over seven (7) months before expert reports were even due. Janssen tries to defeat this time line by arguing that it could not have predicted that a delay in the expert schedule would have occurred and as such they reasonably believed that the quick distribution of the Strupczewski transcript would be necessary.

This Court finds Janssen's argument in this regard somewhat incredulous. Counsel for Janssen are experienced attorneys and well familiar with federal practice. Typically, a very specific deadline is set for the close of fact discovery and for expert discovery. In this case, a deadline was set and extended for fact discovery. In fact, the deadline for fact discovery was extended beyond the date that the deposition of Strupczewski occurred. There were no expert deadlines set in this case until months after the close of fact discovery. Certainly, counsel for Janssen could not have believed that this Court would have imposed an expert deadline that coincided or even shortly followed the fact discovery end date. Moreover, discovery end dates

are often extended upon an informal motion by the parties. Again, Janssen's counsel is quite familiar with practice in this Court and knew or should have known that if they were facing a looming expert discovery deadline, so much so that they reasonably believed they would have needed more time with an expert transcript, they should have informed this Court.

This Court certainly acknowledges Janssen's quick movement in this matter and attempts to expedite the process. However, the Court cannot tax the costs of an expedited transcript on Dr. Reddy's simply because Janssen was anticipating an expert deadline. There was no impending deadline. Hence, there was no reason to over anticipate same. *Therefore, this Court denies Janssen's Bill of Costs as to the $ 754.00 for the expedited transcripts of Strupczewski.*

### D. Esquire "Expert Witness Charges"

Dr. Reddy's claims that certain charges from Esquire designated as "expert witness" surcharges "mysteriously appeared on [Dr. Reddy's] original deposition bills" from Esquire. [See Dr. Reddy's Correspondence, January 31, 2007 at 3]. Dr. Reddy's apparently contacted Esquire at some point after receiving the invoices and disputed these costs as erroneously billed. Ultimately, Dr. Reddy's was able to get those costs removed from the invoices and never paid same. Dr. Reddy's summarily concludes that because Esquire removed the costs from their invoices, Esquire agreed with Dr. Reddy's that the fees were not properly billed. In turn, Dr. Reddy's logics, it should not be responsible for the same fees charged to Janssen because Janssen's failure to object to the "erroneous" fees charged by Esquire does not make the costs taxable. More specifically, Dr. Reddy's asserts that the fees are "unnecessary in that Janssen could have voiced exactly the same complaints as [Dr. Reddy's] did, and avoided the costs entirely, just as [Dr. Reddy's] did. [See Dr. Reddy's Correspondence, January 31, 2007 at 3].

Other than when the matter is controlled by a federal statute or rule, Rule 54(d) vests the Court with a sound discretion in determining the taxability of costs *Newton*, 265 U.S. 78. "The federal courts are free to pursue a case-by-case approach and make their decisions based on the circumstances and equities of each case." *Lacovara*, 102 F.R.D. 959, 961. The burden is on the unsuccessful party to show circumstances that are sufficient to overcome the presumption in favor of the prevailing party, and if the court denies costs it should state the reasons for doing so to allow review. *Id.*

As previously stated, this Court disagrees with Dr. Reddy's interpretation of Esquire's act of removing certain charges from their invoices. While Esquire removed certain charges at the behest of Dr. Reddy's the same may not have occurred if Janssen had requested an adjustment. Moreover, it appears as though certain charges speak for themselves and this Court can understand why a party would not necessarily believe that Esquire included the charges in error. For instance, this Court believes that the expert witness surcharges are surcharges applied by Esquire to expert depositions. While Dr. Reddy's successfully disputed these charges they have not provided sufficient proof that Esquire is not entitled to demand these surcharges. Therefore, this Court determines, in its discretion, as provided by R. 54(d), that there is no compelling reason to deny these fees as taxable for purposes of the instant matter. *Therefore, this Court determines that $ 368.20 is taxable against Defendants.*[13]

### E. Esquire "Technical Deposition", Amicus Disk and ASCII Surcharges

---

[13]

| | | |
|---|---|---|
| | 1. Expert Witness Surcharge for D. Abraham (6/14/06) | $ 174.30 |
| | 2. Expert Witness Surcharge for M. Wolff (6/6/06) | $ 193.90 |
| | **TOTAL** | **$ 368.20** |

As indicated in Dr. Reddy's submissions to this Court, surcharges for "technical depositions, amicus disks and ASCIIs were disputed with Esquire and removed from Dr. Reddy's invoices. For the same reasons set forth above, Dr. Reddy's now wishes this Court to determine that the fees associated with these Esquire surcharges are not taxable. Under the discretion provided pursuant to R. 54(d) this Court finds that the "technical deposition" fees, amicus disk and ASCII surcharges are partially taxable.

Critical to the Court's determination on this issue is that neither party sets forth, with specificity, what these surcharges are so that they can be "readily understood" or why they are specifically objected to. L. Civ. R. 54.1. This Court cannot gleam from the submissions what Esquire's surcharges, "technical depositions", relate to and certainly cannot determine from the submissions what the amicus disks or ASCIIs were required for. Janssen only asserts, very briefly, in its reply, that the "technical deposition" surcharges are included on Esquire's invoice because certain depositions are more difficult for the stenographer to work on. Neither the invoices from Esquire nor the submissions to this Court detail why, for instance, the deposition of Abraham was not considered technical while the deposition of Meltzer was. Pursuant to L. Civ. R. 54.1 the parties are to provide the Court with an explanation as to why certain fees are taxable or state with specificity their objections to such fees. More importantly, there are no affidavits or certifications in support of the position that such "technical" surcharges are the common practice of Esquire or any similar company. This Court should not have to inquire with Esquire why it has charged certain surcharges or why it removed them from some parties' invoices and not others.

As to the amicus disks and ASCIIs this Court has determined that again, neither party

complies with L. Civ. R. 54.1. This Court has some knowledge as to the technical terms amicus disks and ASCIIs. However, it is not the responsibility of this Court to research and define for the purposes of this motion such technical matters. Pursuant to 28 U.S.C. § 1924

> [b]efore any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

28 U.S.C. § 1924.

In supporting its argument for the taxability of the fees for the amicus disk and ASCIIs, Janssen simply states that they are a part of technical depositions and as such are taxable. In turn, in opposing such fees, Dr. Reddy's simply asserts, that these charges were removed from their Esquire invoice and therefore, are not taxable. Neither argument is sufficient for this Court. While Janssen has stated that the disbursements were incurred as a natural result of the depositions they have not shown that the amicus and ASCIIs were necessary to the action. Therefore, they have not complied with 28 U.S.C. § 1924. On the other hand, Dr. Reddy's has not provided a proper objection to said fees and has provided this Court with no statements as to why such items were not necessary. In light of the deficiencies in both parties' submissions, this Court has determined that an equal allocation of the costs is required. *Hence, Dr. Reddy's shall be responsible for the costs of the "technical deposition" surcharges, amicus disk surcharges and ASCII surcharges in the amount of $ 509.30.*[14]

---

[14]
| | | |
|---|---|---|
| 1. Amicus Disk for Kennis Ludo (10/20/04) | | $ 10.00 |
| 2. Technical Transcript Surcharge for K. Ludo (10/20/04) | | $ 167.30 |
| 3. Technical Deposition Surcharge for H. Meltzer (6/9/06) | | $ 150.50 |
| 4. Rough ASCII for Deposition Transcript of J. Strupczewski (11/17/04) | | $ 196.50 |
| 5. Rough ASCII for Deposition Transcript of J. Strupczewski | | |

## III. APPORTIONMENT

There is no motion before this Court requesting that costs be apportioned amongst the Defendants. However, should Mylan be unsuccessful on appeal, they too would be responsible for a portion of the costs in this matter. Unfortunately, Dr. Reddy's did not request that this Court stay the instant matter until the appeal was final. Therefore, the Court was required to determine the taxable costs as to Defendants solely based on Dr. Reddy's submissions. Dr. Reddy's did not object to $ 30,146.34 of Janssen's costs. This Court has determined that of the remaining $ 5,565.75 in costs, $3,466.60[15] is taxable to Defendants. Hence, at this juncture, the Court has determined that $ 33,612.94 is taxable to Defendants.

While this Court believes that the majority of the $ 33,612.94 is, in fact, taxable, it cannot demand that Dr. Reddy's turn over those funds while there exists the possibility of an apportionment motion or a motion by Mylan in objection to Janssen's Bill of Costs. Such an opinion would, in essence, be advisory at this juncture. However, the analysis of costs in this opinion shall stand as to Dr. Reddy's in spite of the fact that Mylan may successfully object to

---

|  |  |
|---|---|
| (11/16/04) | $ 369.00 |
| 6. Technical Deposition Surcharge for C. Tamminga (6/6/06) | $ 125.30 |
| **TOTAL** | **$ 1,018.60** |

[15]
|  |  |
|---|---|
| 1. Video Depositions of Abraham, Meltzer, Tamminga & Kennis | $ 1,243.40 |
| 2. Surcharges related to Video Depositions of Abraham, Meltzer, Tamminga & Kennis | $ 509.85 |
| 3. Video Deposition of Wolff (½ of total cost $1,671.70) | $ 835.85 |
| 4. Esquire Expert Witness Surcharges | $ 368.20 |
| 5. Esquire Technical Deposition, Amicus Disk and ASCII Surcharges (½ of total costs $ 1,018.60) | $ 509.30 |
| **TOTAL** | **$ 3,466.60** |

-23-

certain costs in the future or in the event that Mylan is ultimately successful on appeal and therefore, is not required to pay costs. Additionally, this Order and Opinion shall serve to prevent Dr. Reddy's from presenting further or new objections to costs if and when Mylan asserts itself in this matter. Critically, should any argument by Mylan result in this Court determining that Janssen is entitled to less than the $ 33,612.94, Dr. Reddy's will be responsible for the difference.

## IV. SECURITY

Dr. Reddy's has not appealed the Opinion and Order in this case and has not requested a stay of the Motion for Taxation of Costs. As a result, this Court has determined that Defendants, including Dr. Reddy's are responsible for at least $33,612.94. However, this Court cannot fully enforce the judgment against Dr. Reddy's because the award is against Defendants as a whole. Therefore, under the discretion provided to this Court by R. 54(d), and in order to preserve the rights of all parties to this action this Court orders Dr. Reddy's to post a security, in the amount of $10,000.00 with the Court.

In numerous situations in civil matters, parties may be required to provide surety to secure rights in an action where costs have been taxed against the non-prevailing party. See *McClure v. Borne Chem. Co.*, 292 F.2d 824 (3d Cir. 1961); *Long v Stites* 63 F2d 855 (6th Cir. 1933). This Court has determined that this matter is an instance where a security is deemed necessary. Dr. Reddy's does not dispute that over $30,000.00 in costs is due to Janssen. However, Mylan is appealing the underlying decision and should they be unsuccessful  may ultimately oppose Janssen's Bill of Costs. This means this Court will most likely face a motion for apportionment. Therefore, to protect and preserve the rights of all parties, including Dr.

-24-

Reddy's should they be successful on any future motion to apportion costs, surety is necessary.

Pursuant to 28 U.S.C. § 2041 "all monies paid into [this] Court or any Court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasury of the United States or designated depositary, in the name and to the credit of such court." Additionally, deposits with this Court are governed by L. Civ. R. 67.1.

## V. CONCLUSION

For the reasons set forth above, Janssen's Motion for Taxation of Costs is granted in part and denied in part.  An order consistent with the findings of the Court shall follow.


                              **s/ Esther Salas**
                              **HONORABLE ESTHER SALAS,**
                              **United States Magistrate Judge**


Dated: March 23, 2007